Good morning. Good morning. May it please the court, I'd like to reserve four minutes. All right, counsel, please be reminded that the time shown on your clock is your total time remaining. Understood. All right. So I'd like to start with the jurisdiction issue. I think that's the most important issue in this case. And I think when you get into the briefing, the core question that the jurisdiction issue boils down to is what is the effect, if any, of a non-diverse defendant filing an affidavit which negates the allegations and the complaint? Is that enough to show fraudulent joinder? And if an affidavit can do it, what kind of affidavit can do it? And out of all the cases that the parties have cited on the jurisdiction issue, only two of the cases involve affidavits from the non-diverse defendant like we have in this case. So one of those cases is Grand Care v. Thrower. That's a Ninth Circuit case out of California like this one. And the other case is an Alabama case out of the Eleventh Circuit that's Leg v. Wyeth. So I want to talk about those two cases and I want to compare the affidavits that are involved in them and the affidavits that are then involved here. So in Grand Care, it's a nursing home malpractice case and they sue a non-diverse local administrator of the nursing home. And the non-diverse administrator files an affidavit basically saying, I've never treated this plaintiff. I don't treat plaintiffs. I've never caused any of the issues. I never caused any of the plaintiff's injuries. I don't know anything about the allegations and the of the claims that were made in the complaint. And the court in Grand Care held that that affidavit was not sufficient. So the holding is a denial. Even a sworn denial of the allegations does not prove their falsity. And that's because of the really high standard that you have for fraudulent joinder. So if this case were to proceed in state court, what sort of evidence would you present to make out your claim against Ms. Hum? So I think there's three pieces of evidence that are at issue here. Number one, we have the recollection of the people who are in the office, right? Well, but it wasn't clear to me that we did have any such recollection. I mean, he knows that a, I guess it was a, he does say that it was a woman who came, but he doesn't. Yeah. And he believes her name is Leland Hum. But did he recall that from having interacted with her, what the name was? So he went to his emails to try to refresh his recollection about what that was. He saw an email from her. But that was after that, correct? Yeah. And he believes that it's her. But he doesn't, I mean, he doesn't, I mean, he doesn't put it in terms of refreshed recollection. He says, I looked at the email, I saw the name. And so from that, I inferred that it must be her. So that's, I don't read his declaration as making any claim about his own observations of her. So ultimately, I mean, here's an easy way we can prove the issue in state court. Uh, he's seen her, obviously, she gave him eye drops that he put in his eye. So we can depose Leland Hum or just get a picture of her and say, is this the same person? Right? And then that's going to be conclusive proof. But we're at a very early stage right now. And what you see from both affidavits, Leland Hum's affidavit doesn't say, I've never talked to this person. It says, I don't recall talking to this person. I don't have a record of talking to this person. But that's not the same thing as saying, I know that I didn't talk to him. And at this stage, have you had any opportunity for discovery at this point? No, like barely any. So we actually, there was a fight in the district court over basically, we wanted the business record that the Leland Hum affidavit is based on. Because nobody has seen these records other than her saying, I looked at my own records and this is what they say. We haven't gotten a copy of it. The district court never saw a copy of it. So these records can be incomplete. They can be partial. They could be patchy. We have no idea. Her recollection could be incomplete. We have no idea. There's an easy way to resolve that at the district court. But the reason that these issues, that we don't get into merits issues as part of the jurisdictional analysis, is because there's really not a way to get into that without then turning it into a whole merits issue. And the merits thing has just never been developed here. Ms. Hum has never been cross-examined. Nobody's, other than her attorneys who produced this affidavit, nobody's spoken to her. So there just hasn't been an opportunity to actually get into this factual issue. And if you named a pseudonym as a defendant, that wouldn't be enough to defeat diversity jurisdiction. And it's not necessarily true that you'd get any jurisdictional discovery to sort that out. I guess that's one of the questions. Just name it. Well, I don't know who this person is, but I'm going to name them as Jane Doe and go forward from there. Well, we named Leland Hum because we thought it was Leland Hum. And so we didn't think it was just a Jane Doe person. In fact, we were kind of surprised when the other side came back and there was all of a sudden a dispute over whether it had been her. And that was just something that we never got to actually get into in terms of the merits. There is a possibility that Mr. Proietti has misrecalled or he's got the wrong name. It was a different sales representative. He's explicit in his affidavit that there was a sales representative who visited the office and gave him the eye drops that he put in his eye. But he might have the name wrong, right? That's one possibility. The other possibility is that Leland Hum might have an incomplete recollection, that her business records might be incomplete. And ultimately, the standard for fraudulent joinder is that they have to negate any possibility that the plaintiff could prevail. Well, this isn't negating any possibility because here are possibilities. Leland Hum's recollection could be incomplete. Her business records could be incomplete. Those are possibilities. They don't even require the court to assume that she's lying, which is a possibility. I'm not accusing her of doing that. Those are three different ways that this could be incorrect. And the affidavit that is here is much, much weaker than the affidavit that was in grand care. Normally, when a drug rep goes to a physician's office, they'll leave a card or a number or something. Was there anything of that nature in this case? There was nothing left with the office about her visit. She didn't leave a card. She didn't leave anything. Not that we could find. I think, ultimately, the easiest way to resolve the whodunit question is get either a picture or put Ms. Leland Hum in a deposition and then he or Mr. Perrietti in a deposition and show him a picture. Yeah, it's really odd that he wasn't able to say an age range, a height range, a weight range, a body build range or something. Ethnicity, nothing was given regarding the description. Yeah, I can explain why we didn't include that. And part of that is because once they raise the issue of it's not Leland Hum, well, we don't actually have a photograph of her. Well, but if he saw her, wouldn't he have a recollection of how she looked, what color her hair was or something that would bolster his claim that it was she? Absolutely. And I think that's going to be something that would be easy to resolve in state court. The problem that we have here is that, like, let's say we put into the affidavit, you know, brown eyes, six foot tall or whatever. We don't have anything to tie that to in the complaint. So we don't have a way at this stage without any discovery to make that match Leland Hum, right? Well, if it's her, it wouldn't match her. So I don't understand why you think that would not be a positive thing in your favor to have a description. Because there's nothing in the record that says from their side, Leland Hum is six foot tall, right? And so if he says, I remember somebody who's six foot tall, and we include that in the affidavit, we don't have that yet to tie to her. We would need some amount of discovery, basically, to be able to resolve that question. Well, someone could say if you wait to get a picture of her, then that becomes your description. Whereas if you describe her before having seen the picture, and then the picture matches, the credibility is much higher. That's all I'm saying. And I agree. And I mean, ultimately, I think in state court, we wouldn't have an objection to them deposing Mr. Proietti first to, you know, lock down that thing. But at the end of the day, the standard that we're looking at is not a like, how do we balance the credibility of the different parties? It's a, is there any possibility that the plaintiff could possibly win in state court standard? Yeah, well, that's, I mean, it's the dearth of the evidence that was presented. That's a real question. Yeah. And so I think what you have is at the beginning of the case, at the outset of the case, plaintiffs aren't always going to have a full set of evidence, right? That's what the purpose of discovery is. I mean, that's why in a criminal case, you know, when a defendant gets ID'd by a witness, they put the defendant on the stand and they ask the witness, or in the council table, and they ask the witness, you know, do you recognize this person in the courtroom? Like, the way we would do it in state court is to basically have him ID her as the person, or to extract, you know, a description of him, like you said. But there's ways to do that in state court. We have to look at the state of what we have now and determine whether or not there's a possibility that you could prevail in state court. So looking at what we have now, that's a close question. So looking at what we have now, the question is, does what we have now exclude the possibility? Does it knock out the possibility of doing that? And so the less evidence you have at the early stage, the more opening possibilities there are, then the easier it is to fit through any reasonable possibility standard. And I believe I'm out of time. Oh, I think the clock's about to disappear. It's their burden, not yours, to establish fraudulent joinder by this high standard. Is that right? Yes, Your Honor. Could you speak just a little bit about the sanctions issue? I mean, even if we agree with you and vacate, how do you explain, I mean, you know, basically kind of stipulated to the amount of sanctions. So it kind of put the defendants in the district court in a difficult position with the timing of this reply brief and amendment. Yeah, so I think we have two arguments on the sanctions issue. The first argument is just the wording of the standing order. Why isn't the district court in the best position to interpret its own standing orders, particularly when it already had consistent with the view? So I think the district court's interpretation of the standing order still has to be consistent with English. And the phrase in lieu of has a definitive meaning. It means instead of. So the district court interpreted this to mean if you file an opposition, you are not allowed to file an amendment. No, without notice, right? I believe the district court's interpretation was that once you do one, you can't do the other. So you have to pick. Well, given the timeline, I get that you might have to give notice the day before, but you've probably already chosen by that time whether you're going to, you can either timely file your reply under the rules or if you're not going to timely file your reply, the assumption which you would confirm by a notice of intent is that you're going to amend, right? It seems like that's the way it's supposed to work and you did neither. So rule 15 inherently anticipates that there will be some amount of briefing that the plaintiff will see before they amend because it's 21 days after a 12B motion is filed, right? So the question is what the district court by its interpretation was trying to create is a situation where you don't have a reply. Essentially that gets filed and then an amendment happens. But the balance of how much information should the plaintiff get before they make a decision about whether to amend is ultimately set by the federal rules. The federal rule of civil procedure 15 selects essentially a balance there. They say the plaintiff has a right. You've got 21 days, I guess, to think it through, but you have all of the information in the opposing brief or in the moving brief, I'm sorry, by 10 days before you have to make this decision, right? Nine or 10 days. I think there's additional information you can get from the reply in that the rules of civil procedure allow us to take that information into account and ultimately deciding whether or not to file the amended brief. And that's a right that we have, as this court held in Ramirez. It's a right. And so if it's a right, then the major premise of the argument rule 83 says that local rules and standing orders have a limited ability to restrict the rights of parties who aren't willfully acting in violation of them. And the minor premise then is that this is a right under rule 15, as Ramirez says. And so the question is, can the district court in effect create a shorter period of time for the plaintiff to amend or to decide? Ultimately, what it comes down to is make the decision to amend, right? So under rule 15, we can make that decision up until day 21. Under the court's order, we wouldn't have as long to make the decision. And the court could easily, if they wanted to avoid a situation where work gets done, they could set the opposition date for a 12B motion to just 21 days out. And then you would never have this issue. Thank you. Thank you, counsel. Give you a minute for rebuttal. Good morning, counsel. Good morning, your honor. And may it please the court. Savannah Jensen on behalf of APFE. I'd like to start where my opponent started, which is on the jurisdictional question and address the issues that he raised about the affidavit that we submitted on behalf of Ms. Holm. That, so the affidavit that was submitted in grand care is different from what Ms. Holm submitted here. The affidavit that was submitted in grand care, the defendant denied responsibility for the policies, as my opponent said, for the policies that caused plaintiff to sustain her fall. And she pointed out that her role was simply administrative, but that was not enough. That denial was not enough to show that there was no possibility of recovery because under California law, there were, there was a possibility of recovery against somebody in the role of administrator, even if it hadn't been pled. Here, the issue is different because Ms. Holm isn't saying somebody in the role of sales representative who was there that day may not have liability. She is saying, I was not there that day. It wasn't me. Here's the evidence showing that it wasn't me. And that is different from grand care. Right, but the state court doesn't have to believe that, does it? But the issue is, whether she was fraudulently joined in the federal court. Right, no, I understand that. But, but that in turn depends on whether there's any possibility, right, which is a word that grand care italicized, whether there's any possibility that he could prevail against her in the state court. And what I'm saying is the fact that she's submitted a declaration that says she didn't do it and she wasn't there does not mean that there's no possibility of recovery. That he could prevail against her in state court. I think it does mean that your honor. She doesn't just say, as my opponent represented, that she has no recollection. She says she had no recollection of visiting plaintiff's office. And then she goes on to say, I have never met Perry Prylett, Dr. Gary Rieger, or Dr. Elizabeth McMahon, which were the other doctors that existed there. She confirms that she had met one of the doctors in that office, but in a different location. I know what she says, but your position, I think, requires us to believe that if this were to go to state court and there were an opportunity for discovery and, you know, she could be deposed and that after all of that, there is no possibility that the state court could do anything other than say, yes, we agree with her. Is that is that your view? So the federal court is standing in predicting what the state court might do, right? And the federal court is allowed to consider evidence that's submitted by the defendant. And here there's no reason to doubt Ms. Holmes credibility. But I guess there's no reason to doubt. I mean, we've got what I mean, simplified is basically a swearing contest between two declarants. And there's a little other evidence there, but that might make it close on summary judgment. It certainly wouldn't cut it that a motion to dismiss. And fraudulent joinder is an impossibility test. It's not a plausibility test. It's not a genuine dispute test. Why isn't that enough to get it over the line? Particularly, I guess, under that standard, you know, the email, which is enigmatic, we might say, but, you know, it's within a month of the alleged visit. And it's not an introductory email. It's not anything else. It is at least, it doesn't rule out the possibility that there hasn't been prior contact. So under this really, really low bar for creating the possibility of a court ruling in his favor, why not? So I think as the district court found, there is no dispute of fact that was created by plaintiff's declaration. He admits that the only reason he inferred that it was Ms. Home who visited him was because of that email a month later. But that's not a dispute of fact. That's consistent with her declaration that her first sales call was also in January of 2022. Prior to that, she wasn't taking sales calls. She was new. She had been hired in July. Her training had completed in October. And so. That all sounds like a great to put into a statement of undisputed facts at summary judgment. But isn't the standard much, much lower under grand care? Impossible that he could prevail? And here I think it is impossible that he could prevail. If you look at the evidence that's been submitted, unless you're saying that the only evidence, that the evidence that you have to account for takes into account the possibility of perjury at this stage. Counsel, let me ask you this. I have a question about that. So what do we look at when we're determining the possibility of him prevailing in a state trial? Do we look into the future as to what the depositions could show? What the summary judgment motion would look like? What do we look at? Or do we look at what we have at this present time and try to predict? That's important to me. If whether we consider what was before the court to determine the possibility, or whether we look and see based on future discovery or future events, what do we look at to determine the possibility? Right. You look at what has been submitted in response to this fraudulent joinder inquiry. And what case says that? I think grand care stands for that proposition. I think a lot of the cases that we cite, including some of the Fifth Circuit jurisprudence, talking about the summary inquiry that the federal court conducts at the fraudulent joinder stage supports that. I think this court's jurisprudence on when jurisdictional discovery is appropriate supports that. For that, I would point to since my opponent raised jurisdictional discovery, which wasn't briefed in this case. So the district court in this case... Is there any request for jurisdictional discovery? Not in the lower court. The district, I'm sorry, there... I believe in plaintiff's opposition brief, he took the position that he should have been allowed discovery to identify who, if not Miss Holm. And the district court said that plaintiff wasn't entitled to that discovery. He made a specific finding in his order. And he said plaintiff cites no authority suggesting that defendants were obliged to provide discovery at this stage. Further, it appears that plaintiff is partly responsible for this lack of discovery as defendants offered to provide discovery subject to a protective order that plaintiff refused. What was that offer? We offered to provide the records that were in Miss Holm's declaration. And then on the jurisdictional issue question, the Ninth Circuit recently affirmed denial of jurisdictional discovery where discovery would have been a fishing expedition. Based on theories, which defendants have specifically denied via sworn statements, their allegations in the face of specific denials are insufficient reasons for a court to grant jurisdictional discovery. That case, again, wasn't in our briefing because this issue didn't come up in the appellate brief. But it's Yamashita versus LG Chemical Limited at 62F 4th 496. And the quote was from page 507. How much of the fraudulent joinder inquiry under Grand Cary do you understand to involve legal as opposed to factual questions when we're saying it's impossible? Or do you rest at all on what claims may actually be available against Miss Holm? So I think the court's analysis in Grand Cary was primarily legal. I think the first step was looking at the complaint and saying that the court couldn't conclude based on the allegations that had been pled thus far, that there was no possibility under state law that the administrator would not be liable because there were provisions that might hold somebody in the administrator's role liable. But she didn't have a factual dispute about whether she was in fact the administrator that had been named. She conceded that she was the administrator for the health care facility that was at issue. She was the right party that plaintiff had intended to name. And then her allegation, sorry, her declaration, which was considered in that case, didn't say anything that disputed that kind of theory. And so the Ninth Circuit found she hadn't raised any issue as to whether she could be liable or that there was any possibility that she could be liable. And just to clarify, I take it you don't dispute that if in fact Miss Holm had been there that day and given him the eyedrops that she could be subject, as a legal matter, she could be subject to a negligence claim under state law. Is that right? I don't know that I would concede that at this point, but that's not a basis. You haven't argued that she's not. It's not a basis that we're saying the fraudulent joinder inquiry would be correct. If there aren't any further questions on that issue, I can move to touch on the sanctions issue. So we believe that the sanctions were appropriate here for exactly the reasons that were identified by Your Honor. Here, the district court reasonably interpreted his standing order consistent with a prior decision that he had issued. The in lieu of language in that standing order, it just means that that's the typical procedure. Typically, when you respond to a motion to dismiss, you either file an opposition brief or in lieu of filing an opposition brief, you file an amended complaint. Again, if plaintiff had been confused about that language, he could have figured out what the district court's interpretation of it was. Why shouldn't a plaintiff have the opportunity to see the defendant's last word in reply before making the decision of whether to amend? Which is a right under Rule 15. So he did. He had the right to amend and he did amend. The issue is whether he followed the court's standing order in amending and here he did not. And there's also the separate issue in this case that plaintiff had already acknowledged that he had been planning an amendment since the party submitted an original joint stipulation asking for extended time for defendant to file its initial motion. So here it's just implausible that plaintiff waited, didn't realize he was going to amend until he saw a reply brief when he had the same arguments that we had made in our original motion to dismiss. I don't think there was anything in our reply brief. I mean, don't we, might we have to answer that question more generally though in order to determine whether there's a conflict between the operation of the two, the standing order? I mean, the question is whether the standing order and operation conflicts with Rule 15, not the particular question of this case. At least that's one of them. So the district court designed his standing order to be consistent with Rule 15. Plaintiff still has the entire 21 day period to amend. It's just he shouldn't have filed an opposition brief if he was intending to amend. And how, I mean, I understand that the district court had already interpreted this, but I'm struggling with how to read the words of the order. And maybe you can help me then. So where a defendant has filed a Rule 12b6 motion, okay, that happened here. And in lieu of filing an opposition, if the plaintiff intends to file an amended complaint, then there's the requirement. On its face, that seems like it applies in the situation where the plaintiff intends to file an amended complaint, but not an opposition. It doesn't, I mean, I don't know how we give effect to the phrase in lieu of without concluding that this just doesn't apply if you're going to file both an opposition and an amended complaint. So how do we get that out of these words? It's just not typical practice to file both. And so I think what the district court was getting at is you file your opposition by the date on which it's due, which plaintiff did not do here. And if you're not going to file an opposition, then you either need to file your amended complaint by that date or file notice saying that you're going to take the remainder of your Rule 15 period. I think it's consistent with how practice generally operates. On that reading, doesn't even that require a plaintiff to commit to amending prior to what Rule 15 requires? But I think what you mentioned in your question to my opponent is exactly right. If you have to file an opposition by the deadline set forth in the local rules, by the time you're filing your opposition, you presumably know if you're going to oppose versus amend. Yeah, although this is a day before, so it doesn't quite work. In terms of the reading it prior to the date on which the opposition is due. So I get it might take some lawyers more than a day to draft a brief in opposition, but that doesn't quite align with that reading, I guess is the hiccup there. So in this case, plaintiff didn't do either. He didn't file a timely opposition brief. He also didn't file an amendment by the day before or the day of. All of these pieces happened after the deadline. So even for that reason, I think it was appropriate to still find that he had violated the district court standing order and award a reasonable sanction here. The district court didn't obviously award terminating sanctions and the district court allowed the amendment and we litigated the rest of the case based on the amended complaint. So he didn't lose any right that he had. He was just asked to compensate defendants for the time spent in responding to his violation of the standing order. Alright, if there are no further questions, I think my time is up. Anyways, thank you all. One minute. I'd like to just make two very brief points. Number one, there was a really great question which was what do we look at? Do we look at what has been on file now? Or do we look at what might be on file in the state court? Grandview answers that question. In Grandview, there was an affidavit from the defendant. But give me the language, the holding in Grandcare, the language from the court that says we look down the road at everything that might possibly be admitted. So it's the operation of what they did. It's at least by implication. I don't think there's a specific. OK, I understand your argument. I was looking for some specific language in Grandcare that tells us what we looked at. What we look at. And in Grandcare, they looked specifically at the documents that were presented to the district court. They didn't go into what could be introduced later during discovery. There was no plaintiff's affidavit, though. And so if they were only looking at the defendant's affidavit, the entire universe would have been that affidavit, right? And so it's not necessarily. I mean, they were looking at it compared to the complaint. So it's not that was not the entire universe. They measured that against the complaint. Yes, that's correct. And the second is with respect to the protective order, we had a disagreement on the form of the protective order. We offered any standard protective order. They wanted a protective order that wouldn't have allowed us to use the documents they disclosed, which obviously would defeat the point of having the documents. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for a decision by the court.
judges: RAWLINSON, MILLER, JOHNSTONE